**E-FILED**
Monday, 28 April, 2008  01:48:09 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| GEORGE E. SCHOONOVER, )  | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **Case No. 07-CV-2189** |
| ) | |
| CENTRAL LABORERS' PENSION FUND, ) | |
| ) | |
| **Defendant.** ) | |

### OPINION

On October 10, 2007, Plaintiff, George E. Schoonover, filed his Complaint (#1) against Defendant, Central Laborers' Pension Fund. Plaintiff brought his action under sections 502(a)(1)(B) and 502(a)(3) of the Employee Retirement Income Security Act of 1974 (ERISA), as amended (29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3)). Plaintiff alleged that he is a participant in an employee welfare benefit plan (Plan) administered by Defendant's Board of Trustees. Plaintiff alleged that he is totally and permanently disabled based upon the definition included in the Plan. Plaintiff alleged that Defendant has breached the Plan by denying him benefits to which he is entitled under the Plan. Plaintiff asked this court to find that he is totally and permanently disabled under the provisions of the Plan and entitled to receive a Disability Pension, order Defendant to pay Plaintiff Disability Pension benefits that should have been paid to him in the past as well as the proper amount of Disability Pension benefits in the future. Plaintiff also sought an injunction enjoining and restraining Defendant from denying him his rightful Disability Pension benefits. In addition, Plaintiff sought an award of reasonable attorney's fees and costs.

This case is now before the court for ruling on Defendant's Motion for Summary Judgment (#8) and Plaintiff's Motion for Summary Judgment (#12). This court has carefully reviewed the arguments of the parties and the documents submitted by the parties. Following this careful review,

Plaintiff's Motion for Summary Judgment (#12) is GRANTED and Defendant's Motion for Summary Judgment (#8) is DENIED.

## FACTS[1]

Plaintiff was born in 1951 and is currently 56 years old. He began working as a laborer through the union in 1978 and became a participant in Defendant's Pension Plan. Defendant administers the pension by and through its Board of Trustees. On February 15, 2005, Plaintiff submitted an application for a total and permanent disability pension benefit. Plaintiff stated that he had last worked on January 15, 2004, and had been disabled since February 2004.

Defendant requested medical documentation from Plaintiff's treating physicians, Dr. Michael Muscatella and Dr. Gregory Walters. The medical information provided showed that Plaintiff was diagnosed with peripheral neuropathy, a condition associated with nerve damage. In Plaintiff's case, the condition caused him to have extremely painful burning in his feet.

On March 31, 2005, Defendant sent Plaintiff a letter stating that its Claims Review Committee reviewed Plaintiff's application and denied it. The letter stated that the Committee concluded that Plaintiff did not meet the criteria set forth in the Plan for "Total and Permanent Disability." At the time of this decision, Section 1.31 of the Plan provided:

> A "Total and Permanent Disability" shall mean that, in the opinion
>
> of a licensed medical practitioner selected or approved by the

---

[1] In setting out the facts, this court has relied on Defendant's Proposed Undisputed Material Facts, Plaintiff's Statement of Additional Material Facts and a review of the documents which were considered by Defendant as part of the administrative record in this case. As explained below, this court's review is limited to the evidence in the administrative record. See Hess v. Reg-Ellen Machine Tool Corp., 423 F.3d 653, 662 (7th Cir. 2005). Accordingly, this court has not considered the affidavits Defendant submitted with its Reply.

Trustees, the Employee is totally and permanently unable as a result of bodily injury or disease to engage in further employment or gainful pursuit as a Laborer or other Building Trades Craft employment in the construction industry for remuneration or profit, regardless of the amount, or unable to engage in further employment or gainful pursuit of non-Laborer or other non-Building Trades Craft employment for which the employment is considered full-time and a primary source of income.  For such non-Laborer or other non-Building Trades Crafts employment, . . . the Participant may earn up to $14,000 per calendar year in non-Laborer or other non-Building Trade Crafts employment and be considered totally and permanently disabled. Such disability must be considered total and permanent and will continue during the remainder of the Participant's life.  The Trustees shall be the full and final judges of Total and Permanent Disability and of entitlement to a Disability Pension hereunder.

Plaintiff appealed the denial of disability benefits to Defendant's full Board of Trustees.

Defendant obtained an independent medical examination of Plaintiff.  Dr. David J. Fletcher, the independent medical examiner, reviewed Plaintiff's medical records and also conducted his own examination of Plaintiff.  The medical records reviewed included records from May 2005 from Dr. Muscatella.  In those records, Dr. Muscatella concluded that Plaintiff is not capable of working.  Dr. Muscatella stated that Plaintiff needed to continue to be off work because any type of activity aggravates his neuritic symptoms.  Dr. Muscatella also indicated that Plaintiff was unable to stand,

3

walk, lift, or climb stairs due to pain in both feet and that his restrictions included the inability to sit without elevating his feet.

Dr. Fletcher prepared a report, dated September 22, 2005.  In his report, Dr. Fletcher stated that Plaintiff was "not working because any type of activity aggravates his neuritic symptoms and he is applying for permanent disability based on his pain level and his symptoms and his inability to stand or walk or perform any meaningful work."  Dr. Fletcher stated that Plaintiff's pain was located in his feet and "radiates some."  He stated:

> Standing and walking make his pain worse.  Laying down, raising his legs and feet make his pain better.  This injury has restricted him from working because he cannot stand on his feet very long, he has burning then a surge of bad burning anytime night and day.  It wakes him up.  He has had sleep and/or psychological problems as a result of his condition.

Dr. Fletcher stated that Plaintiff's clinical exam supported his subjective complaints.  Dr. Fletcher stated that Plaintiff had features of neuropathic pain on exam and was noticeably limping.  Dr. Fletcher also noted that Plaintiff had mild swelling of both feet.  Dr. Fletcher specifically concluded that there was "no evidence of symptom magnification."   Dr. Fletcher stated that Plaintiff's condition was "not going to improve and affects his critical job demand of walking/standing, etc. that is required of a laborer."  Dr. Fletcher stated that Plaintiff "could do sedentary work if available."

On November 28, 2005, the Trustees approved an amendment to the Plan, which was effective October 1, 2004.  The amendment changed the language of Section 1.31 of the Plan.  This

4

Section now provides:

> [A] Total and Permanent Disability shall mean that, in the opinion of a licensed medical practitioner selected or approved by the Trustees, the Participant, as a result of bodily injury or disease not resulting from an intentional self-inflicted injury, is totally and permanently able neither to:
>
>> (1)     engage in any further employment or gainful pursuit as a laborer or other building trades crafts employment in the construction industry for remuneration or profit, regardless of the amount, nor
>>
>> (2)     engage in further employment or gainful pursuit of non-laborer or other non-building trades crafts employment for which the employment is considered full-time or a primary source of income.
>
> A Total and Permanent Disability must be considered total and permanent and expected to continue during the remainder of the Participant's life.   The Trustees shall have sole and exclusive authority to determine whether a Participant has suffered a Total and Permanent Disability.

The November 28, 2005, amendment to the Plan also created an Occupational Disability Benefit which provided benefits for a participant "totally and permanently unable to engage in any further employment or gainful pursuit as a laborer or other building trades craft employment in the

construction industry for remuneration or profit, regardless of the amount."

On December 2, 2005, Defendant's executive director sent a letter to Plaintiff stating that Defendant's Board of Trustees had reviewed all medical information regarding his claim. The letter stated that, after considering all of the information presented, the Board acted to uphold the denial of his benefit claim. The letter further stated that the Board had recently authorized the addition of an "Occupational Disability Benefit" which equaled 50% of the participant's accrued pension. The letter stated that this benefit was payable "when a participant cannot work as a laborer but can still do other types of work." The letter stated that Plaintiff should notify Defendant it he wanted to apply for this benefit.

On December 7, 2005, Plaintiff notified Defendant that he would like to receive Occupational Disability benefits. Plaintiff began receiving benefits of $724.58 per month, one-half of his accrued pension, with the benefits retroactive to October 1, 2004.

On July 28, 2006, Attorney Glenn A. Stanko sent a letter to Defendant's executive director stating that he represented Plaintiff. Plaintiff's attorney questioned Defendant's decision to deny Plaintiff benefits for total and permanent disability. Plaintiff's attorney pointed out that Dr. Muscatella had concluded that Plaintiff would never be able to work. Plaintiff's attorney recognized that Dr. Fletcher had stated that Plaintiff "could do sedentary work if available" but noted that "Dr. Fletcher gave no indication as to what kind of sedentary work [Plaintiff] could supposedly do, whether he could do it full time or as a primary source of income, or whether any such work was available to do." Plaintiff's attorney also stated that new information was available since Defendant's Board made its decision. He stated that the Social Security Administration, in a decision dated March 6, 2006, determined that Plaintiff has been totally disabled since January 15,

2004.  Plaintiff's attorney stated:

> Social Security Disability benefits are not awarded, of course, unless the applicant is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that has lasted, or can be expected to last, for a continuous period of not less than 12 months.  This finding is not surprising considering that [Plaintiff] never completed the tenth grade, always worked in labor positions requiring him to be on his feet constantly, and has no computer, mathematical, accounting, or clerical skills.

Plaintiff's attorney requested that the Board reconsider its decision to deny Plaintiff a full disability pension.

Subsequently, at Defendant's request, Plaintiff provided Defendant with a copy of Plaintiff's Social Security disability file.  This documentation showed that a finding was made that Plaintiff's residual functional capacity limits him to sedentary work.  The vocational evaluator for Social Security noted that Plaintiff was 54 years old and had 10 years of education.  The vocational evaluator concluded that Plaintiff could not return to his past work and that he did not have any skills transferable to sedentary work.  Therefore, Plaintiff's Social Security disability claim was allowed.  Plaintiff's attorney sent a letter to Defendant with this documentation and stated that the documents showed that  Social Security had determined that Plaintiff was unable to engage in any "substantial gainful work which exists in the national economy," citing 42 U.S.C. § 423(d)(2).  Plaintiff's attorney stated that, if Plaintiff is unable to engage in any substantial gainful work which

exists in the national economy, then he is certainly unable to engage in any employment which is "considered full-time or a primary source of income."

On November 7, 2006, Defendant's executive director sent a letter to Plaintiff's attorney asking if Plaintiff would be willing to submit to a Vocational Assessment with a Labor Market Evaluation. On December 8, 2006, Plaintiff's attorney sent a letter to Defendant's medical director stating that it was his understanding that Defendant would forward the names of three to five candidates to do the requested assessment. Plaintiff's attorney stated that he would review the information regarding the suggested individuals and advise which, if any, were acceptable. On January 3, 2007, Defendant's medical director sent Plaintiff's attorney information regarding four vocational experts who responded to Defendant's request to perform an assessment of Plaintiff.

Plaintiff's attorney responded on February 20, 2007. He stated that he was not impressed with the qualifications of the proposed evaluators. He stated that he "decided to just go ahead and have someone with indisputably strong credentials do the evaluation, at our cost." Plaintiff's attorney attached a copy of a Vocational and Rehabilitation Assessment of Plaintiff, dated February 12, 2007, prepared by J. Stephen Dolan of Dolan Career & Rehabilitation Consulting, Ltd.

Dolan's report stated that Plaintiff was referred for an assessment of the extent to which his functional limitations erode his access to the labor market, if in fact they do, and specifically for an assessment of whether he has the ability to do sedentary jobs. Dolan stated that Plaintiff was interviewed and tested for four hours fifteen minutes using a peer reviewed vocational assessment structured interview and testing format. Dolan's report stated that Plaintiff told him he was expelled from high school and was not clear whether he finished the 9th grade or not. Plaintiff also reported that he took the GED test in 1976 or 1977 but did not know if he passed it. Plaintiff told him he

8

started two classes at Parkland College in 1980 but quit going to classes after about four weeks. Dolan stated that Plaintiff described his limitations as far as physical activities and said he spends much of his day in a recliner with his feet elevated.  He also lies down in bed twice during the day because lying down is the most pain free position for his feet.

Dolan administered the Wide Range Achievement Test 4, a test of the basic academic skills necessary for effective learning, communication and thinking.  Plaintiff's composite reading score was in the 21st percentile, his spelling score was in the 14th percentile, and his math score was in the 39th percentile.   Dolan also administered the Purdue Pegboard test, a test of fine manual manipulation.   On this test, Plaintiff scored below the 1st percentile with his dominant right hand, below the 1st percentile with his left hand, at the 1st percentile with both hands together, and at the 5th percentile in assembly.  Dolan's report ended with the following conclusions:

1)     There is no disagreement among[] the doctors whose reports I have seen, that [Plaintiff] cannot be on his feet for protracted periods of time and is therefore relegated to sit down, or sedentary jobs.  That means that [Plaintiff] has lost access to the type of work he has done since the 1970's, and to a job that was paying him $23 per hour plus a benefit package.

2)     The question then is whether [Plaintiff] has real access to sedentary jobs.  According to the U.S. Department of Labor, in its Dictionary of Occupational Titles, Revised 4th Edition, only about 11 percent of the jobs that exist in our economy

are sedentary.  By that measure alone [Plaintiff] has lost access to 89 percent of the jobs that exist.  Most of the sedentary jobs that exist in our economy are jobs that require education and/or training that [Plaintiff] does not have.  He has no training to be a computer draftsman or bookkeeper or typist, for instance.

3)  The doctors who have offered opinions about [Plaintiff's] employability have all focused on his feet problems. [Plaintiff] has problems in addition to his feet.  He has restricted use of his dominant right arm because of a previous shoulder injury and operation.  He has restricted ability to do fine manipulations with his hands and fingers, due perhaps to years of doing hard manual labor or due perhaps to peripheral neuropathy in his hands and fingers.  Those issues, particularly the inability to do fine manipulation rapidly, seriously erode the base of sedentary jobs.

4)  [Plaintiff] is not an attractive candidate, to a prospective employer, for a sedentary job.  Sedentary workers work with their hands, doing fine manipulation or they work with their mind and their voice. [Plaintiff] cannot do rapid fine manipulation and does not articulate himself particularly well. He talks like what he has always been, a construction laborer.

10

He does not read particularly well.  He spells very poorly.
There is no reason for an employer to hire [Plaintiff] for a
sedentary job rather than hire someone who can do fine
manipulation rapidly and who can articulate well.

5)      If it is true, as [Plaintiff] indicates, and as the treating
physician indicates, that he has to elevate his feet much of
each day to keep his pain level under control, he is not
employable in a sedentary job.  Sedentary workers have to be
able to work with their trunk straight and their hands in front
[of] them.  They cannot be reclined because they then cannot
work rapidly with their hands.

On May 3, 2007, Defendant sent a letter to Plaintiff's attorney stating that Dr. Fletcher had
reviewed Dolan's assessment and recommended that a functional capacity evaluation (FCE) be
performed so that Plaintiff's functional capacity could be defined.  The letter stated that the FCE had
been scheduled for May 17, 2007, from 9 a.m. to 12 p.m. and from 1 p.m. to 4 p.m.  On May 9,
Plaintiff's attorney responded and stated that he was puzzled as to why Defendant would want an
FCE at this point in the claim process.  He stated that "Dr. Fletcher already has found that [Plaintiff]
has 'a condition that is not going to improve and it affects his critical job demand of
walking/standing, etc. that is required of a laborer'" but that Plaintiff "'could do sedentary work if
available.'"  Plaintiff's attorney expressed the opinion that the issue at that point was whether there
was any available sedentary work that Plaintiff could do.  Plaintiff's attorney stated that website of
the company hired to perform the FCE stated that it was oriented towards determining whether an

11

individual can return to his prior work, which was not an issue in Plaintiff's case.  Plaintiff's counsel

noted that the FCE was scheduled to last six hours and stated the "kinds of tests administered would

potentially put [Plaintiff's] physical well-being at risk."  Plaintiff's attorney stated:

> [F]or the reasons outlined above, we decline to have [Plaintiff]
> submit to the proposed FCE.  If you believe that there is something
> else we should consider, please let me know.  Otherwise, the Board
> of Trustees has everything it needs in order to make a final decision
> on this matter.  The record clearly establishes that [Plaintiff] satisfies
> the definition of "Total and Permanent Disability" under the policy.
> He is on social security disability.  He clearly would be unable to
> earn a living doing sedentary work.  There is simply no reason for
> further delay.

On August 31, 2007, Defendant's executive director sent a letter to Plaintiff's attorney

stating that the Board of Trustees had decided to uphold the denial of Plaintiff's application for a

disability pension.  The letter stated that Dr. Fletcher had completed a review of Plaintiff's

Vocational and Rehabilitation Assessment and all other medical information provided on Plaintiff's

behalf.  The letter noted that Plaintiff had declined to submit to the FCE, which Dr. Fletcher had

recommended and which "would allow the Trustees to make a definite conclusion regarding

[Plaintiff's] medical condition."  The letter pointed out that no "information or medical opinion was

provided to describe how the FCE 'would potentially put [Plaintiff's] physical well-being at risk.'"

The letter stated that Defendant was aware that Plaintiff was receiving Social Security disability

benefits but explained that "a Social Security Disability review considers not only the individual's

medical condition, but also their educational background, age and other issues in determining eligibility for Social Security disability benefits."[2]  The letter stated that, in order to be entitled to a disability pension under the Plan, "a claimant must neither be able to work at all as a 'laborer' nor be able to engage in full time employment as a 'non-laborer.'"  The letter said that a "claimant who, like your client, is able to perform sedentary work does not meet the Plan's definition of total and permanent disability."  The letter stated that, "based upon all available information that [Plaintiff] is willing to provide, the Trustees are unable to conclude that [Plaintiff] is eligible for a Disability Pension."

As previously noted, Plaintiff filed his Complaint (#1) in this court on October 10, 2007. Both Plaintiff and Defendant have filed Motions for Summary Judgment.

ANALYSIS

I.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Mote v. Aetna Life Ins. Co., 502 F.3d 601, 606 (7th Cir. 2007), quoting Fed. R. Civ. P. 56(c).  When, as here, both parties have moved for summary judgment, both are required to show that no genuine issues of material fact exist, taking the facts in the light most favorable to the party opposing each motion. Black v. Long Term Disability Ins., 2007 WL 2821997, at *4 (E.D. Wis. 2007).  Therefore, when

---

[2]  An abstract prepared by Defendant summarizing the information Defendant received prior to making its decision stated "[s]ince the Fund only considers an applicant's ability to work at some functional level full time, factors other than the applicant's functional abilities, such as whether there are jobs the applicant would enjoy or would be able to secure in the geographical area around his home, is not relevant to the applicant's eligibility."

this court considers cross motions for summary judgment, this court must review the record construing all inferences in favor of the party against whom the motion under consideration is made. See Mote, 502 F.3d at 606; see also Lawrence v. Life Ins. Co. of N. Am., 2007 WL 2410180, at *5 (N.D. Ill. 2007) (cross motions for summary judgment demand a "dual perspective").

## II.  STANDARD UNDER ERISA

Under ERISA's civil enforcement provision, § 1132(a)(1)(B), the judicial standard of review hinges on whether the language of the policy grants the plan administrator or fiduciary discretionary authority in making benefit determinations. Lawrence, 2007 WL 2410180, at *5, citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  When "the terms of an employee benefit plan afford the plan administrator broad discretion to interpret the plan and determine benefit eligibility, judicial review of the administrator's decision to deny benefits is limited to the arbitrary-and-capricious standard." Mote, 502 F.3d at 606.  In this case, the parties agree that the Plan confers on the administrator that type of discretionary authority so that this court's review is based upon an arbitrary and capricious standard.  "This is, of course, a deferential standard of review." Hess v. Hartford Life & Accident Ins. Co., 274 F.3d 456, 461 (7th Cir. 2001).  Under the arbitrary and capricious standard, courts "will overturn a plan administrator's decision 'only . . . if it is downright unreasonable.'" Mote, 502 F.3d at 606 (citations omitted).  A court's review under the arbitrary and capricious standard is limited to the evidence in the administrative record.  Hess v. Reg-Ellen Machine Tool Corp., 423 F.3d 653, 662 (7th Cir. 2005); Silva v. Fortis Benefits Ins. Co., 437 F. Supp. 2d 819, 828 (N.D. Ill. 2006); see also Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan, 195 F.3d 975, 981-82 (7th Cir. 1999).

However, "ERISA was enacted to promote the interests of employees and their beneficiaries

in employee benefit plans, and to protect contractually defined benefits." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 830 (2003); Rudzinski v. Metro. Life Ins. Co., 2007 WL 2746630, at *7 (N.D. Ill. 2007); see also Helms v. Monsanto Co., 728 F.2d 1416, 1420 (11th Cir. 1984) ("Congress wanted to assure that those who participate in the plans actually receive the benefits they are entitled to and do not lose these as a result of unduly restrictive provisions"). Therefore, even under the arbitrary and capricious standard of review, "ERISA's purpose in protecting a plan participant's rights must be safeguarded." Carugati v. The Long Term Disability Plan for Salaried Employees, 2002 WL 441479, at *8 (N.D. Ill. 2002). Review under this standard is not a rubber stamp. Mote, 502 F.3d at 606. "Deferential review is not no review" and "deference need not be abject." Hess, 274 F.3d at 461; Carugati, 2002 WL 441479, at *8. "In some cases, the plain language or structure of the plan or simple common sense will require the court to pronounce an administrator's determination arbitrary and capricious." Hess, 274 F.3d at 461, citing Gallo v. Amoco Corp., 102 F.3d 918, 922 (7th Cir. 1996). "[I]f fiduciaries or administrators of an ERISA plan controvert the plain meaning of a plan, their actions are arbitrary and capricious." Swaback v. Am. Info. Techs. Corp., 103 F.3d 535, 540 (7th Cir. 1996); Carugati, 2002 WL 441479, at *4.

## III. MERITS OF THIS CASE

Defendant argues that it is entitled to summary judgment on Plaintiff's ERISA Complaint because its decision that Plaintiff was not eligible for a "Total and Permanent Disability" pension benefit under the Plan was not arbitrary and capricious. Defendant argues that it appropriately rejected Plaintiff's argument that he is totally and permanently disabled under the Plan "because there is apparently no sedentary work for him." Defendant contends that it "is permitted - in its discretionary authority - to make a determination regarding a claimant's eligibility for a disability

benefit by evaluating his physical ability to perform work, and it is not required to prove that there is actually an employment position immediately available to suit his (admittedly limited) physical condition."  Defendant stated that its decision "is based squarely on the medical evaluation and opinion of Dr. Fletcher that Plaintiff can perform certain kinds of non-laborers work."

Plaintiff contends that he is entitled to summary judgment because Defendant's decision to deny him disability benefits was arbitrary and capricious based upon the plain language of the Plan. Plaintiff argues that Defendant's determination that employability is irrelevant to the benefit decision, so that vocational factors such as age, education, training and job skills are not taken into account, is contrary to the language of the Plan which states that an applicant is disabled if he is unable to "engage in further employment or gainful pursuit of non-laborer or other non-building trades crafts employment for which the employment is considered full-time or a primary source of income."  After careful consideration, this court agrees with Plaintiff.

In Quinn v. Blue Cross & Blue Shield Assn., 161 F.3d 472, 476 (7th Cir. 1998), the Seventh Circuit held that the plan's denial of benefits was arbitrary and capricious because it failed to determine whether the plan participant had the necessary skills to obtain a job.  In Quinn, the plan defined a disabled person as an individual that was "prevented, by reason of mental or physical disability, from engaging in any occupation comparable to that in which he was engaged for the Employer, at the time his disability occurred."  Quinn, 161 F.3d at 474.  Although the plan concluded that Quinn was able to perform "thousands of jobs in the local economy," the Seventh Circuit held the plan failed to discover "what Quinn's job duties entailed, what her exertional requirements were, any training and experience she possessed, or any transferable skills she may have obtained."  Quinn, 161 F.3d at 476.

The district court in <u>Carugati</u> discussed <u>Quinn</u> and noted that the plan in <u>Quinn</u> based its definition of disability on the ability of a plan participant to engage in employment.  <u>Carugati</u>, 2002 WL 441479, at *5.  In <u>Carugati</u>, the plan stated that a participant was eligible for disability benefits if the participant was "prevented by Disability from doing any occupation or work for which you are or could become qualified by training, education, or experience."  <u>Carugati</u>, 2002 WL 441479, at *1.  The district court determined that, through its own terms, this plan "grounds its definition of disability on a participant's ability to function in employment."  <u>Carugati</u>, 2002 WL 441479, at *4. The district court noted, however, that the plan's determination on the plaintiff's benefits eligibility failed to discuss her potential for employment, or whether she could become qualified for employment through training or education.  <u>Carugati</u>, 2002 WL 441479, at *4.  The district court therefore concluded that the plan's denial of benefits was arbitrary and capricious, again noting that the plan and the opinion of its medical director "failed to evaluate Carugati's ability to engage in employment, which constitutes the plan's definition of disability."  <u>Carugati</u>, 2002 WL 441479, at *7-8; <u>see also</u> <u>Poulos v. Motorola Long Term Disability Plan</u>, 93 F. Supp. 2d 926, 933 (N.D. Ill. 2000) (Motorola's determination was unreasonable because it took into account only physical ability "and did not make the holistic inquiry demanded by its own Plan language, which would have required taking into consideration [the plaintiff's] age, skills, job history, and other relevant factors).

Similarly, in <u>Demirovic v. Building Serv. 32 B-J Pension Fund</u>, 467 F.3d 208 (2nd Cir. 2006), the plan at issue provided that "you must be unable to perform any gainful employment to be considered totally and permanently disabled under this Plan."  <u>Demirovic</u>, 467 F.3d at 209-10.  The plaintiff in that case applied for disability benefits claiming that she was totally disabled due to knee problems caused by osteo-arthritis.  <u>Demirovic</u>, 467 F.3d at 210.  At the time she applied for

disability benefits, the plaintiff was 55 years old and had worked as a night cleaner for approximately 30 years.  Demirovic, 467 F.3d at 209.  The pension fund referred the plaintiff to Dr. Edward A. Toriello, an outside specialist, for a disability evaluation.  Dr. Toriello concluded that the plaintiff was "presently able to work in a sedentary capacity."  Demirovic, 467 F.3d at 210.  The pension fund denied the plaintiff's claim on the basis of Dr. Toriello's conclusion that she was able to work in a sedentary capacity.  Demirovic, 467 F.3d at 210.

The plaintiff appealed the denial, and the pension fund referred her to another physician, Dr. Andrew D. Brown.  Dr. Brown found that the plaintiff had "impaired" mobility and was "able to perform sedentary work only," which was "limited to six hours per day."  Demirovic, 467 F.3d at 208.  Dr. Brown further stated that "[t]he ability to perform sedentary work is based on her physical examination only.  It does not take into account her education nor work skills or any other diagnoses that would preclude her from performing work duties."  Demirovic, 467 F.3d at 210.  The plaintiff's counsel then submitted additional medical evidence.  The plaintiff's doctor stated that, due to her knee impairments, the plaintiff "would be unable to perform [a] sedentary job on a prolonged sustained basis."  Demirovic, 467 F.3d at 211.  Another doctor discussed the plaintiff's medical problems and stated that he advised her against resuming any kind of work.  In addition, a psychiatrist stated that the plaintiff presented "poor concentration and slow mentation."  Demirovic, 467 F.3d at 211.  The plaintiff's appeal was denied, and she filed a complaint alleging that the decision to deny her disability benefits violated ERISA.  The district court granted summary judgment in favor of the pension fund and the plaintiff appealed.

The Second Circuit Court of Appeals first concluded that it would apply arbitrary and capricious review to the pension fund's determination.  Based on this standard, the court concluded

that the pension fund's review of the plaintiff's claim suffered from a fundamental flaw. Demirovic, 467 F.3d at 212. The court stated:

> The Fund's determination that Demirovic is *physically* capable of
> performing some form of sedentary work may be supported by
> substantial evidence; but the Fund appears to have given no
> consideration whatsoever to whether Demirovic could in fact find
> such sedentary work.

Demirovic, 467 F.3d at 212-13 (emphasis in original). The court rejected the pension fund's argument that it was not required to take the plaintiff's vocational circumstances into account. Demirovic, 467 F.3d at 213. The court noted that, under ERISA, a "general disability plan" is a plan in which a plan participant is considered able-bodied if he is able to perform any gainful employment, as opposed to an "occupational plan," in which a participant is considered able-bodied only if he is able to perform the duties of his particular occupation. Demirovic, 467 F.3d at 213 n.4. The court discussed the fact that a determination of whether a claimant is able to engage in any further gainful employment would seem to require consideration of a claimant's vocational characteristics and the sort of work that is actually available in the community. Demirovic, 467 F.3d at 213. The court opined that a "determination of 'employability' cannot be purely a medical diagnosis." Demirovic, 467 F.3d at 213. The court stated:

> The question before us is whether the [plan's] language may
> reasonably be interpreted –as it appears the Fund interprets it–so
> strictly as to deny benefits to any claimant who is physically capable,
> in the abstract, of any kind of work whatsoever, regardless of the

19

> claimant's individual vocational circumstances.  We hold that it may
>
> not.

Demirovic, 467 F.3d at 213.  The court concluded that "a finding that a claimant is physically capable of sedentary work is meaningless without some consideration of whether she is vocationally qualified to obtain such employment, and to earn a reasonably substantial income from it, rising to the dignity of an income or livelihood, though not necessarily as much as she earned before the disability."  Demirovic, 467 F.3d at 215.  The court further concluded that, "[i]n this case, a proper inquiry would require not only a medical assessment of [the plaintiff's] physical capacity to perform both physical and sedentary work, but also a non-medical assessment as to whether she has the vocational capacity to perform any type of work–of a type that actually exists in the national economy–that permits her to earn a reasonably substantial income from her employment, rising to the dignity of an income or livelihood."  Demirovic, 467 F.3d at 215.  The court stated that "[t]he record here, however, shows a complete absence of consideration of [the plaintiff's] vocational circumstances" and added that "[t]his record cannot pass muster even under the deferential arbitrary and capricious standard of review."  Demirovic, 467 F.3d at 216.

This court concludes that Demirovic is very closely on point, involving a definition of disability similar to the definition at issue here, and that the court's reasoning is extremely persuasive.  Moreover, other courts have reached a similar conclusion based upon the same type of analysis.  See Torix v. Ball Corp., 862 F.2d 1428, 1430-31 (10th Cir. 1988); Helms v. Monsanto Co., 728 F.2d 1416, 1420-21 (11th Cir. 1984); Solnin v. GE Group Life Assurance Co., 2007 WL 923083, at *12 (E.D.N.Y. 2007); see also VanderKlok v. Provident Life & Acc. Ins. Co., 956 F.2d 610, 614-15 (6th Cir. 1992). .

In this case, Defendant's Plan defined total and permanent disability as the inability to engage in "gainful pursuit" of non-laborer employment "for which the employment is considered full-time or a primary source of income."  (Emphasis added.)  Based upon this language, and the cited case law, it is clear that Defendant could not deny benefits based upon a conclusion, in the abstract, that Plaintiff was physically capable of performing sedentary work and was required to consider Plaintiff's vocational circumstances in order to determine whether he was vocationally qualified to obtain employment, and to earn a reasonably substantial income from it.  See Demirovic, 467 F.3d at 213-15.  This court flatly rejects Defendant's argument that it did not need to consider whether there was actually any job available for Plaintiff, based upon his characteristics and vocational capacity, and could, in its discretion, rely solely on Dr. Fletcher's conclusion that Plaintiff was physically capable of performing sedentary work.  This court therefore concludes that Defendant controverted the plain meaning of the Plan, so its decision to deny Plaintiff full disability benefits was arbitrary and capricious.

In its Reply (#15), Defendant has complained bitterly about Plaintiff's attorney's unilateral decision to reject the four vocational experts proposed by Defendant and have the vocational assessment conducted by Dolan.  However, this court agrees with Plaintiff that it was not unreasonable for Plaintiff to obtain his own assessment.[3]  This court further agrees with Plaintiff that submitting Dolan's report was consistent with ERISA regulations and the Plan, both of which allow a claimant to submit written documentation in support of the claim.  Moreover, Defendant considered Dolan's assessment and did not seek to consult with a vocational expert of its own,

---

[3]  This court notes that, in his Reply, Plaintiff has included a detailed explanation regarding why he found the four vocational experts proposed by Defendant objectionable and why Dolan was "both independent and better qualified than defendant's proposed candidates."

although it could have hired its own vocational expert to review Dolan's assessment or do an assessment for Defendant.

Defendant also complains about the unilateral decision by Plaintiff's attorney to refuse Defendant's efforts to obtain an FCE of Plaintiff.  However, this court agrees with Plaintiff that Defendant has not explained how Plaintiff's submission to the requested FCE would have, or could have, changed anything in this case.  Dr. Fletcher, who conducted an independent medical examination of Plaintiff on behalf of Defendant, determined that Plaintiff had the functional capacity to perform sedentary work.  This was not disputed by Plaintiff; the issue Plaintiff raised was whether there was any available sedentary work that Plaintiff could do.  This issue depended on vocational factors, which an FCE would not address. Moreover, Plaintiff is correct that Defendant did not respond to Plaintiff's objections to the FCE prior to upholding the denial of his claim.

Defendant also argued in its Reply that Demirovic and the other cases cited by Plaintiff do not apply to this case because Defendant's Plan is a "hybrid" plan that provides a general disability plan and an occupational plan.  This is nonsense.  Defendant has not provided a persuasive argument explaining why this would be true and this court can discern no reason to analyze a general disability plan any differently just because the plan also includes an occupational disability plan.  This court agrees with Plaintiff that the definition of "Total and Permanent Disability" in the Plan controls. This definition clearly provides that the claimant must be unable to engage in "gainful" non-laborer employment "for which the employment is considered full-time or a primary source of income." Based on this definition, and irrespective of whether the Plan also provides a one-half benefit for claimants who are unable to engage in employment as a laborer, Defendant was required to consider whether Plaintiff was vocationally qualified to obtain non-laborer employment, and to earn a

reasonably substantial income from it.  See Demirovic, 467 F.3d at 213-15.   Plaintiff is correct that

Defendant has not even attempted to offer an analysis of the Plan language and has only offered

arguments that are merely diversions from the issue of whether the language of the Plan requires

consideration of Plaintiff's vocational circumstances and employability.

Because this court has concluded that Defendant's decision to deny Plaintiff full benefits was

arbitrary and capricious, Defendant's Motion for Summary Judgment must be denied.  In his Motion

for Summary Judgment, Plaintiff argues that the pleadings and relevant exhibits filed by the parties

show there is no genuine issue of material fact with respect to whether Plaintiff is entitled to receive

a Disability Pension under the terms of the Plan.  Plaintiff contends that "[b]ased on the definition

of "Total and Permanent Disability" contained in the Plan, defendant's own finding that plaintiff is

physically limited to doing sedentary work, and the evidence submitted by plaintiff showing he is

unemployable in a sedentary capacity, plaintiff is clearly entitled to receive a Disability Pension."

Plaintiff has asked this court to enter appropriate orders directing Defendant to pay Plaintiff the

proper amount of past and future Disability Pension benefits, and enjoining and restraining

Defendant from denying Plaintiff his rightful Disability Pension benefits.

This court recognizes that, in many circumstances, the appropriate remedy is reversal of the

plan's decision and a remand for consideration of the plaintiff's vocational circumstances.  See

Quinn, 161 F.3d at 477-78; Carugati, 2002 WL 441479, at *9; see also Demirovic, 467 F.3d at 216;

Solnin, 2007 WL 923083, at *12.  However, Plaintiff is correct that, in some cases, the evidence is

"so clear cut" that it would be unreasonable on any grounds to deny benefits and it is appropriate

for a court to simply award the proper benefits.  See Hess, 274 F.3d at 464; Poulos, 93 F. Supp. 2d

at 933.  "Where there is no evidence in the record to support a termination or denial of benefits, a

23

retroactive award of benefits is appropriate." Rudzinski, 2007 WL 2746630, at *20. This court

finds that both the Social Security disability finding, which includes a determination that Plaintiff

is unable to engage in any "substantial gainful work which exists in the national economy," and

Dolan's vocational assessment establish that there is no sedentary work available to Plaintiff,

considering his age, education, background, skills, and physical limitations.[4] There is nothing in the

claim file that questions or contradicts this conclusion. More importantly, in its argument to this

court, Defendant has conceded that "there is apparently no sedentary work available for [Plaintiff]."

Therefore, Defendant has not disputed this fact but instead has argued that it does not matter. This

argument ignores the plain language of the Plan, which this court has concluded requires a

consideration of Plaintiff's vocational circumstances. This court agrees with Plaintiff that, if his

vocational circumstances and employability are considered, there is no conceivable way that his

application for a Disability Pension could be denied. The record in this case conclusively shows that

Plaintiff is unable to work. This court therefore agrees with Plaintiff that a remand of this case to

Defendant is not necessary.

There is no dispute in this case that the amount of Plaintiff's Disability Pension, based upon

total and permanent disability, is $1,449.15 per month. Plaintiff has been receiving one-half of that

amount, $724.58 per month, effective October 1, 2004. Plaintiff contends that he should receive the

full Disability Pension amount effective August 1, 2004, because he has been disabled since

---

[4] Courts have held that, although a Social Security disability determination is not binding on an ERISA plan administrator, it can be "compelling evidence" of a claimant's disability and may be considered by a court reviewing an ERISA claim. Lawrence, 2007 WL 2410180, at *6; see also Rudzinski, 2007 WL 2746630, at *18. This standard is not inconsistent with the language of the Plan which provides that the Trustees may, at their discretion, accept as evidence of Total and Permanent Disability a determination by the Social Security Administration that the participant is entitled to a Social Security Disability Benefit.

February 2004 and the Plan provides that the Disability Pension commences on the first day of the sixth month of a participant's "continuous total and permanent disability."  Plaintiff acknowledges that Defendant should, of course, get credit for the one-half Occupational Disability benefits it has been paying effective October 1, 2004.  Based upon these figures, and allowing Defendant the appropriate credit for benefits paid, this court calculates that the total amount owed to Plaintiff, through the end of April 2008, is $34,054.81.

IT IS THEREFORE ORDERED THAT:

(1) Plaintiff's Motion for Summary Judgment (#12) is GRANTED and Defendant's Motion for Summary Judgment (#8) is DENIED.

(2) Defendant is hereby ordered to pay Plaintiff the sum of $34,054.81 for disability benefits owing from August 1, 2004, through April 30, 2008.  Defendant is further ordered to pay Plaintiff a Disability Pension of $1,449.15 each month beginning May 1, 2008.  Defendant is enjoined and restrained from denying Plaintiff his rightful Disability Pension benefits under the Plan.

(3) This case is terminated.  Plaintiff may file a motion for attorney fees and costs under 29 U.S.C. § 1132(g) within 30 days of the date of this Opinion.

ENTERED this 28th day of  April    , 2008.

s/MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE